Morning, Your Honors.  Erin Radican for Appellant Philip Garcia. May it please the Court. The issue before the Court today is an extremely important issue. As you're aware, in the federal system, the remedies for getting a conviction vacated or overturned so that you could get rid of immigration consequences are extremely limited. Mr. Garcia came to the United States when he was five years old. He's been a legal permanent resident since he was nine years old. He has seven U.S. citizen children. He owns a business that employs 12 employees. He cooperated, he served his time, completed his probation, and completed the sentence that the government thought was appropriate in this case. What we're asking is that the Court, Quan, does leave open the possibility to excuse delay where counsel misadvised a petitioner as to the available remedies. Unfortunately, the first district court decision should have been appealed, or there should have been a motion for reconsideration. The Court should have, Mr. Evazian, post-conviction counsel in the first quorum nobis petition should have asked for an evidentiary hearing. The government did suggest and say to the Court, he may be able to convince you of the credibility of his claim, which was essentially asking for an evidentiary hearing. So, Mr. Garcia, his only option at that point was to file after Mr. Evazian did not advise him of the right to appeal, did not seek a motion for reconsideration. His only option is to file another petition. So the issues are, can you file a successive quorum nobis petition? Under what circumstances? And how can Quan be extended to excuse delay where the petitioner delayed because he was pursuing remedies that counsel told him to pursue? Counsel, I think part of the problem here is that even assuming we could extend Quan to the extent, you know, his quorum nobis counsel is misadvising him, you know, failed to file the appeal, then pursued other remedies, there's, you know, then filed a second quorum nobis petition, there are still substantial amounts of delay that are essentially unexplained. And I'm looking at the time period between, I guess, even if I assume after the failure to appeal the denial of the first quorum nobis petition, and let's say Quan can be extended to the period of time where instead of appealing, Avazian applies for immigration relief. Then we have the hiring of a new lawyer in September 2021, and essentially nothing as far as I can tell from 2021 to 2023. Then there's a referral recommendation to see another lawyer. And then again, nothing essentially for another period of months until the second quorum nobis petition is filed. So I have an unexplained delay from September 2021 to August 2023. So I had the petition for the second petition, and it was only a delay of three months to get it together and file it. That's you're saying from May 2023 to August 2023. That was the retention of you and the preparation. And that was the preparation for me. So then from September 2021 to the time that you were retained. Right. Which the judge, the district court talked about, because the district court talked about, I think going to the timing that Judge Sung talked about, the district judge at ER-5 talked about when summing up an unexplained 22 months delay, which I believe corresponds to the dates Judge Sung was mentioning. The reason is because Mr. Garcia was unaware of the availability of a remedy, of the possibility of filing a second quorum nobis petition. Okay. But the delay clock starts with when he's aware that his conviction will make him deportable. That's true. And I think it's clear from the record, he was aware of that in 2016 or 2017. So he hires counsel to file a quorum nobis petition. What should have happened is that counsel should have asked for an evidentiary hearing so that Mr. Garcia could testify. And I think it's reasonably probable he would have succeeded and the quorum nobis petition would be granted. It is true that there's a delay period between 2021 and 2023, but it's Mr. Garcia averse. He was unaware of the remedy until Sabrina DeMast advised him, you should go to another post-conviction counsel. Even DeMast took essentially almost two years to give him that advice. Should that be held against Mr. Garcia? I mean, it seems it's, it is extremely unfair. It seems that Mr. Garcia has been receiving almost nothing but ineffective assistance of counsel, but his constitutional right to effective assistance of counsel does not extend to every single proceeding that he's in. It doesn't, but the re, Quan leaves open the possibility that that can be a valid reason for delay. And when, in this- Quan pretty quickly filed for quorum nobis after the immigration efforts failed, correct? Almost immediately. Whereas here in your brief, you are acknowledging that your client knew that he had no defense in the immigration process. But he also was unaware that there was any remedy. But he'd already tried quorum nobis. Yes. I mean, and as far, he was unaware that there, he did apply, try immigration remedies. And eventually he did get prosecutorial discretion. I mean, I'm very sympathetic. You've described the equities, it's difficult, but the quorum nobis timeliness is because as in this case, we have really no record now, 20 years after the conviction of what was advised. That's the crucial inquiry. So the timeliness is that we don't end up in a situation where there's no transcript. The guilty plea does suggest that he has to be deported. So immigration came up in the rule 11 context, correct? No. You're shaking your head? I thought the guilty plea in 20,000 said it had a probation condition that would contemplate possible deportation. Wrong? I don't, I don't recall. My understanding was at that time there wasn't immigration advisements in the plea agreement or during the, so it was in the PSR? Or it was a condition of probation? Yes. I thought, but I may be wrong. It's not that significant. My larger point is just quorum nobis, it does, can cause great harshness. It's denial and Thomas, but it's for a reason that we don't end up in a situation where Judge Klausner just has no records. If we were to get to an evidentiary hearing, it's really hard. The lawyer saying, I may not have given any advice. Your client saying, oh yeah, he misadvised me. He said I won't be. And yet maybe the probation condition implies that everyone did know there could be immigration context. I mean, Eaglin filed a declaration saying I didn't put anything in my file indicating I advised him. Right. But that wouldn't be enough. Right? I didn't advise him. That wouldn't be enough. That wouldn't be enough. Yes. It has to be affirmative misadvice. Does it matter at all that the government would be prejudiced by having to try your client 25 years after the crime if you got quorum nobis relief? I think that the value to the government of an old conviction where the defendant has served the time sought by the prosecutor, like in California, for example, there are documents to come back, even if there's been a delay and they're not in custody, to seek to set aside the conviction. So the value to the government of a conviction for which a sentence he served long ago, someone who has shown rehabilitation, I don't think, I think that should not be weighed so strongly. It's not relevant that the government might not be able 25 years later to go the route that they would have gone, presumably, in 2000 if your client had gotten the advice you say he should have and gone to trial. Because the advice would have included, but if you're convicted after trial, it's the same, right? Right. You face the same immigration consequences. So what your client, in your view, should have been told is whether you plead guilty or if you go to trial, unless you can beat it, you're going to face these immigration consequences. Well, there were other solutions. He could have paid the restitution off. He could have pled to misprision. There were other solutions. Well, I mean, but is there any evidence the government offered a lesser deal that he turned down, a different plea that he turned down? There's no evidence of that, but the government was okay with probation in this case. And to me, that is important, but I don't think that the government's interest in preserving an old conviction under circumstances where the person has served his time and now is facing deportation to a country that is completely alien, I think that deserves more weight and consideration that there should be a remedy for him. Right now, he got prosecutorial discretion, but of course, with the Trump administration, he could be detained at any time. So there's just very limited remedies in the federal system. And to me, I think that the equities are so strong that it makes sense to extend quant to excusing delay or at least sending it back to the district court to perhaps allow him to testify and to maybe explain that period of delay, but the reason for the delay was that he didn't know there was a remedy. All right. Thank you, counsel. Good morning, your honors. May it please the court, Hava Morel on behalf of the United States. The district court properly denied this second petition for quorum nobis relief, and I want to begin with the issue of delay. Judge Sung is correct that there is just no explanation for the delay with respect to Ms. DeMast, the second immigration attorney, from September 2021 to at the very least May of 2023. Defendant has urged this blanket reliance. She wants to be able to say, well, so long as there's an attorney, I can claim that I've relied on that attorney, but that's not reasonable and that's not sound. At the very least, to demonstrate reliance on an attorney's advice, you need to identify at least what that advice was and when it was provided, and here we have no suggestion from Ms. DeMast of when she provided advice, what it was, and that the defendant actually relied on it. I'm a little lost on your calculation of delay. In your brief, are you actually saying that delay is up to 17 years? You mean with respect to 2000 to 2017? Well, you tell me because I thought you were arguing for the first time on appeal, contrary to the first district court's quorum nobis ruling, and without any objection saying the same to the second district judge. Now to us, you're actually arguing over a dozen years of delay. Am I correct? Yeah, I think our brief... Am I correct that this is an argument you're making for the first time in front of us? That is correct, Your Honor. This is the first time that we are making this argument. And it would be inconsistent with the district court's initial quorum nobis ruling when he found that it was timely, it just didn't rise, correct? Yes, it would be inconsistent. That's a pretty significant government argument. Can you back that up? Well, I want to kind of break down the time periods that we're really focusing on here. Our brief obviously argues from the time of the plea until 2014 as one time period. I want to focus on the time periods that actually, I think, are more substantive here or that have a greater likelihood of success. I'm asking you to justify a position you urged us to take in your brief from the guilty plea. How can the government pursue that? Sure. From the point of the guilty plea, I think the cases we cite, for example, Bonilla v. Lynch, albeit it arises in an equitable tolling case for a motion to reopen. But the gist of those cases is that the defendant still has an independent obligation to exercise personal diligence. But it's a little bit ironic for the government to be raising that issue for the very first time now. I mean, why isn't that just completely forfeited or waived at this point? Because the government didn't raise it in the opposition to the first quorum notice petition. So, well, I'm not here to, first of all, defend the government's gross oversight in failing to respond to the second petition. And with respect to the first petition, I don't think the argument was waived or conceded as defense counsel suggests. I think what we did was we addressed the time periods that we had based on the exhibits that were appended to the defendant's petition and argued from there. We didn't consider the whole record. We didn't consider the 2000 to 2016. We didn't consider the 2000 to 2014. But this court can affirm on any basis supported by the record, and the government is entitled to help the court identify those bases that would support the performance. But the key is, when did the government charge him with being deportable? And I don't understand how the clock can start before that time. So, my record question to you is, when did you charge Garcia as deportable? He received a notice to appear in August of 2014. How can any day before that count as delay? Given the cases from the immigration context, including Bonilla v. Lynch, they suggest that even regardless of the formal notice to appear, you're expected to exercise reasonable diligence. Now, I recognize, Judge Higginson, that that's not the most persuasive argument. So, I'd like to focus on actually what are unquestionably sound delays that occurred after the notice to appear. Yeah, and you're just hearing sometimes when an argument is strained against a district court's ruling, against logic, against law, it's sort of a distraction in the brief for the government to urge that argument. But if you have a better argument, go ahead. Sure. So, I began with the September 2021 to, at the very least, May 2023. There's no explanation there. Also, with respect to the August 2014, that's when he receives the notice to appear. And in the second declaration, Mr. Garcia says, in his own words, that the notice to appear alleged that he was removable based on his federal conviction because it was an aggravated felony. And he describes himself as being stunned. Now, I think somewhere in the district court proceedings, the date changed to 2016 because someone submitted a declaration saying that was the clearest date. But if we're just going based on Mr. Garcia's declaration and his own words, it's August 2014, which starts the clock. And then he didn't hire Mr. Avazian until some indeterminate point in 2016. He doesn't specify. And did you make this particular argument about the 2014 to 2016 period below? We did make it with respect to the first petition. However, it's a little complicated, Judge Sung, because with respect to the first petition, there was actually a lot of confusion in the defendant's petition about the significance of the 2014 date. And he had argued that in 2014, he was denied naturalization, and that's what gave him notice. There was no mention aside from the actual exhibit of the I-261 from June 2016 that suggested that there was an August 2014 notice to appear. But that was not discussed in the substance of the brief or in the declarations. It was just part of the, I think it was exhibit seven to the petition. So there was confusion about the significance of the 2014 date, but nevertheless, the government said, look, the delay here can be anywhere from one year, 2016, or three years, 2014. And it's up to the court to decide. So we did make that argument, at least with respect to the first petition. Let's say that the criminal defense attorney had submitted in a declaration, I affirmatively told him he'll never be deported, therefore he should take this plea. That would be fundamental error. The original Coram Novus denial would have been wrong, and it would be then error, ineffective for the defense attorney not to have appealed it. Just to clarify your hypothetical here. The defense counsel submits an affidavit that says, I affirmatively advised him. Take it Padilla. And I looked at it, I didn't know immigration law, and I said, take this plea, you'll never get deported. Well, that would be ineffective performance. We'd still have to evaluate prejudice, which I know Judge Bennett had some questions about.  Yes, you're right. Okay. Thanks. May I ask one legal question? Because Coram Novus law is not that well developed. A lot borrows from habeas. So could you speak just quickly to our standard of review as to untimeliness? On delay, it was the de novo review of denial on that basis, but clear error for factual findings with respect to what periods were delay. Okay. So abuse, I'm sorry, de novo review of the element of time? The denial based on delay, but clear error with respect to the judge's factual findings. And that's the best authority is habeas, or you have a Coram Novus case? I'd have to go back to our brief in terms of what we cite, Your Honor. I can also address the last period of delay here, or I can also address the abuse, which is August 2017 to May 2019. And that's about 21 months, and that accounts for the time after the district court denied the petition to when Mr. Abbasian started taking alternate remedies. And this is similar to the Damast argument, where really he claims he's relying on Mr. Abbasian, but he's not actually saying what advice Mr. Abbasian provided, when that advice was provided. And so there's just no reason to give him credit for actually relying on it. It's not enough to say I had an attorney retained, and therefore all of my delay is excused. I thought there was a declaration from Abbasian saying I made a mistake, I should have told him to appeal, but I didn't. Yes, but we have no sense of timeline, Your Honor, with respect to that. And that, this, mind you also, that declaration occurred with respect to the second petition. That happens after the defendant is already aware of this delay issue. He's represented by competent counsel, both here in the courtroom, and he has some read in Damast, who spent a page of her declaration saying that she's an expert in criminal immigration law, and she knows full well how hard relief is to secure in this context, and that time is of the essence. And no one provides explanations for why there were delays. And so there's no reason why the defendant should be benefiting when he knew full well, given that this was a successive petition, the burden that he bore. What's his current status? I don't believe it's in the record. I think that defense counsel mentioned that there was an exercise of prosecutorial discretion with respect to his immigration proceedings, but it's not in the record. Unless the court has any further questions, we'd ask that this court affirm the denial of the second quorum vote, second quorum vote, this petition. Counsel, we'll give you a minute for rebuttal. So regarding, I just ask that you look carefully at Mr. Garcia's declaration with regard to delay. He was unaware of, that he could file a notice of appeal or motion for reconsideration, and was really unaware of having any remedy. And that was the reason for the delay. And he was acting pursuant to the advice of counsel, and I think the record is clear that they were just trying different remedies, but the immigration remedies were very unlikely to succeed. And they were, Mr. Garcia was simply unaware of the possibility of trying a second quorum notice petition. That was really his only remedy. So the remedies are just, it's very stark, and I think the equitable considerations here should, there should be more room in quorum notice procedural law to allow defendants who reasonably rely on the advice of counsel to seek a remedy from a constitutional violation. All right. We thank counsel for their arguments. The case just argued is submitted, and with that we are adjourned for the day. All rise. This court for this session stands adjourned.
judges: Higginson, BENNETT, SUNG